ST. PAUL & DULUTH RAILROAD COMPANY v. CITY OF DULUTH and Another.

July 12, 1898.

Nos. 11,023—(154).

**Railway across Public Street—Branch Line—Sp. Laws 1861, c. 1.**
The right granted to the Lake Superior & Mississippi Railroad Company (now St. Paul & Duluth Railroad Company) by Sp. Laws 1861, c. 1, to construct its railroad across any public road or highway, does not extend to branch roads which are neither a part of, nor appurtenant to, its main line to the west end of Lake Superior.

**Same—Unimproved Platted Street—Adverse Possession.**
The mere construction, maintenance and occasional use by a railroad company (which has no conveyance of the land) of an ordinary railroad track across a platted street while it still remains unimproved and unfit for public use, and before public convenience or necessity requires it to be opened and improved for use as a street, does not constitute adverse

possession, as against the public. Such occupancy must be presumed to be subject to the paramount right of the public.

Action in the district court for St. Louis county to enjoin the city of Duluth and the Duluth Street Railway Company from interfering with certain railroad tracks of plaintiff in the city of Duluth. The cause came on for trial before Moer, J., without a jury; and at the conclusion of plaintiff's testimony, the court, on motion of defendants, dismissed the action. From an order denying plaintiff's motion for a new trial, it appealed. Affirmed.

*Hadley & Armstrong,* for appellant.

Appellant is the successor of the Lake Superior & Mississippi Railroad Company, and the possessor of all the rights, privileges and immunities of that company. The charter of that railroad company (Sp. Laws 1861, c. 1) authorized it to construct a railroad from the west end of Lake Superior to the Mississippi river, and to construct the railroad across any public or private road, highway, stream or watercourse, if the same be necessary. It is conceded that to authorize the occupation of a public street by a railroad company legislative authority must exist. This authority need not be expressly conferred, but may be given by necessary implication. For instance, a general grant to construct a railroad between certain termini, without prescribing the exact course or line, is sufficient to authorize the crossing of public highways, because this is necessary in order to execute the grant. Inhabitants v. Connecticut, 4 Cush. 63; 2 Dillon, Mun. Corp. § 707 (4th Ed); Lewis, Em. Dom. § 270; Com. v. Erie, 27 Pa. St. 339; State v. Montclair, 35 N. J. L. 328; Allen v. Mayor, 53 N. J. L. 522; Cleveland v. Speer, 56 Pa. St. 325; Black v. Philadelphia, 58 Pa. St. 249; Philadelphia v. Williams, 54 Pa. St. 103. As to the construction of similar powers, see Gray v. First Division, 13 Minn. 289 (315); State v. St. Paul, M. & M. Ry. Co., 35 Minn. 131; State v. St. Paul, M. & M. Ry. Co., 62 Minn. 450; Village of Wayzata v. Great Northern Ry. Co., 50 Minn. 438; Village of Wayzata v. Great Northern Ry. Co., 67 Minn. 385; Kettle River R. Co. v. Eastern Ry. Co., 41 Minn. 461, 471; Chicago, B. & N. R. Co. v. Porter, 43 Minn. 527.

Appellant concedes that the street railway is entitled to a cross-

ing, but it insists that it shall be made in such a manner as not to interfere with the use of appellant's tracks. Under our contention it is immaterial, as respects this proceeding, as to when or how the street was acquired, for the evidence of adverse user or enjoyment is sufficient to give appellant the right by prescription to cross the street with its tracks, and use the same for the purposes of railroad operation.

As to the acquisition of easements by prescription, see Mueller v. Fruen, 36 Minn. 273; Prentice v. Geiger, 74 N. Y. 341; Swan v. Munch, 65 Minn. 500; Cornwell v. Swift, 89 Mich. 503; Hesperia v. Rogers, 83 Cal. 10; Bodfish v. Bodfish, 105 Mass. 317; Barnes v. Haynes, 13 Gray, 188. The rule is now well settled in this state that the public lose the right to occupy streets on the same principles as those upon which private right to land is lost. The case is not different therefore from acts of occupation as respects private property. City of St. Paul v. Chicago, M. & St. P. Ry. Co., 45 Minn. 387; Village of Glencoe v. Wadsworth, 48 Minn. 402; St. Paul & D. R. Co. v. Village of Hinckley, 53 Minn. 398.

*Thomas S. Wood* and *Ayers, Morris & Greene,* for respondent Duluth Street Railway Company.

*J. B. Richards,* for respondent City of Duluth.

The respondents contend: (1) That appellant derives all its rights from the acts of the legislature; (2) that those acts are to be strictly construed; (3) that the sole authority to cross streets, expressed or implied in those acts, at the most refers only to such crossing of the streets as is necessary for the construction of the main line of appellant from the Mississippi river to Lake Superior; (4) that the Rice's Point line in general, and the "Gray's Mill Track" in particular (the track which gave rise to the pending litigation), are not part of the main line of the Lake Superior & Mississippi Railroad; (5) that consequently no right passes under the legislation in this state to cross any street on the Rice's Point line, or on the Gray's Mill track, with its line of rail.

As to the rule of strict construction of grants of franchise to corporations, see Proprietors of Charles River v. Proprietors of War-

ren Bridge, 11 Pet. 420, 545; 23 Am. & Eng. Enc. 397; 4 Thompson, Corp. c. 114.

The statutes incorporating appellant and its predecessors authorized the construction of the railroad only to the west end of Lake Superior. Laws 1857 (Ex. Sess.) c. 93, §§ 2, 7; Sp. Laws 1861, c. 1. Sp. Laws 1870, c. 63, which legalizes the construction of tracks on Rice's Point, refers only to the tracks then in existence, and therefore does not apply to the Gray's Mill track, which was not built until 1872.

By the simple act of placing ties in Arthur avenue, and laying rails on those ties, and leaving the ties and rails there for 15 years, appellant could not obtain either an easement or a fee in the land. There must undoubtedly be, in addition, a use of the road so created to constitute prescription or adverse possession. Texas v. Wilson, 83 Tex. 153; Emery v. Raleigh, 102 N. C. 209. The right obtained in this case can only be a prescriptive right to an easement for a right of way. It would not be a title to the soil. Entry upon a street, and use of the same as and for a right of way, would not be an entry under a claim of title in fee. It could, therefore, never ripen into a title in fee. Indianapolis v. Ross, 47 Ind. 25; Village of Wayzata v. Great Northern Ry. Co., 50 Minn. 438; 1 Am. & Eng. Enc. (2d Ed.) 887.

Appellant's possession was not hostile. It is the law that until the time arrives when any street or part of a street is required for actual public use, and when the public authorities may be properly called upon to open it for the public, no mere nonuser of any length of time will operate as an abandonment of it; and all persons in possession of it will be presumed to hold subject to the paramount right of the public. Reilly v. City, 51 Wis. 526; Lane v. Kennedy, 13 Oh. St. 42; Com. v. City, 16 Pick. 442; Henshaw v. Hunting, 1 Gray, 203.

It further appears that the possession of plaintiff in this case is held under deeds and licenses which distinctly recognize the plat and existence of the street. In numerous decisions it is held that the fact·of possession is not regarded to be hostile when it is taken under deeds which characterize the possession and recognize the existence of the street, to a part of which title is claimed by reason

73 M.—18

of adverse possession. Texas v. Wilson, supra; Smyles v. Hastings, 22 N. Y. 217; Bridges v. Wyckoff, 67 N. Y. 130; Village v. Steyner, 135 N. Y. 341; Mayor v. Law, 53 Hun, 637; In re Commissioners, 53 Hun, 556; Hurley v. Mississippi & R. R. Boom Co., 34 Minn. 143; Borer v. Lange, 44 Minn. 281.

BUCK, J.

The St. Paul & Duluth Railroad Company, plaintiff herein, is the successor of the Lake Superior & Mississippi Railroad Company, and for many years has maintained a railroad track on Rice's Point, in the city of Duluth, crossing two streets or highways known as "Garfield Avenue" (formerly "Third Street") and "Arthur Avenue" (formerly "Fifth Street"). In the early part of June, 1897, the defendants tore up this railroad track where it was laid across Arthur avenue; and the plaintiff immediately replaced the track, and obtained an injunction from the court restraining the defendants from tearing up, removing or interfering with the track during the pendency of the action. The differences as to Garfield avenue were subsequently adjusted. The application for a permanent injunction as to Arthur avenue came on for hearing on its merits in September, 1897, at a general term of the district court of St. Louis county, and upon defendants' motion the action was dismissed. A motion for a new trial was made and denied, and plaintiff appeals.

A considerable portion of the plaintiff's evidence was introduced in support of its claim that it had acquired an easement in the nature of a right of way across Arthur avenue, the locus in quo, by adverse possession. Rice's Point was platted in 1858. Arthur avenue, which appears upon this plat, was from 1881 up to 1896 a sandy or marshy waste; and during this time it had not been opened, used or worked as a public highway. It was not needed during such time for highway purposes, and had no actual, visible marks of existence for avenue or street purposes; and 15 years had not elapsed between the time when it was first required for public use as a highway and the commencement of this action. G. S. 1894, § 5155, provides

"That all the provisions of this title ["The Time of Commencing Actions"] as to the time of the commencement of civil actions shall

apply to municipal and all other corporations with like power and effect as the same applies to natural persons."

This law would undoubtedly apply to this case if Arthur avenue had, during a period of 15 years, been opened, worked and used as a public highway by the city of Duluth prior to the commencement of this action. But the difficult question arises upon the fact that during part of said time it was not so opened, worked, used and recognized as a public street, nor needed for such purpose, by said city.

When a party makes a plat of his land, with streets and avenues marked thereon, and duly files the plat for record, the municipal corporation within whose boundaries the land is situate may adjudge when its necessities require the use of such streets and avenues for public purposes; and until it has so determined, taken possession, opened and used it, the statute of limitations will not commence to run against it. The mere execution and filing of a plat by the owner of land cannot entail upon a municipal corporation the absolute duty to protect the streets thereon marked, as against occupants thereof. Its right in regard to the plat may remain dormant for a reasonable time, at least, but until such right springs into life no legal obligations arise against it. In this Western country, and especially during the so-called "boom times," thousands of acres of land were platted, and frequently included land designated for street purposes, which, by reason of hills, rocks, marshes or deep water, at various places therein, were utterly unfit for public ways until improved, and often at great expense. Such designated street a municipal corporation is not bound to protect against occupants until the time arrives when such street, or part of it, is required for actual public use, and is actually opened.

Of course, this rule would apply to any street marked on a plat, where the dedication thereof is not accepted, and where it is not opened for public use. Hence persons in possession of such platted streets, or part of them, will, until the time arrives when such streets are required for actual public use, be presumed to hold subject to the permanent right of the public. Reilly v. City, 51

Wis. 526, 8 N. W. 417; Town v. Alling, 40 Conn. 410; Henshaw v. Hunting, 1 Gray, 203.

It is unnecessary to discuss at length the question of adverse possession of the locus in quo prior to 1881, as the evidence is too meager and insufficient to establish such possession. Evidence of adverse possession is to be construed strictly, and is not to be made out by inference or presumption, but by clear and positive proof. The burden of proving the essential facts which create title by prescription rests upon him who asserts it. No such facts were proven in this case as to possession prior to the year 1881.

The next point raised by appellant is that the special acts of the legislature which incorporated the Lake Superior & Mississippi Railroad Company authorized the St. Paul & Duluth Railroad Company to construct its tracks across Arthur avenue, without need of further authorization. We have examined the material provisions of the various legislative acts bearing upon this case, and we find none of them authorizing the building of the track in question across Arthur avenue. If these acts can be construed as applicable to the main line, or even to a side track, where it crosses public streets and highways, they are inapplicable to a track of this character. It is not part of the main line, and cannot be properly considered a spur or side track. It is constructed nearly at right angles from the main line, extending a long distance through private property, and over the public streets not occupied by the main line. It is in fact a distinct branch of the main line, and we find no express or implied authority for its crossing Arthur avenue, the locus in quo in question.

It would serve no good purpose to go into any further details, or extend this opinion.

Order affirmed.